**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF LOUISIANA**

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL ACTION |
| VERSUS | 16-51-SDD-RLB |
| QUINN P. REED | |

## RULING

This matter is before the Court on the *Second Motion to Suppress*[1] filed by the Defendant, Quinn P. Reed ("Defendant"). The United States ("the Government") has filed an *Opposition*[2] to this motion. The Court held an evidentiary hearing on this motion on August 14, 2017 and took the matter under advisement.[3] The Court has considered the arguments of the Parties, the testimony and evidence presented at the hearing, and the law as applied to the facts of this case. For the reasons set forth below, the Defendant's motion shall be DENIED.

### I.     FACTUAL BACKGROUND[4]

The Defendant was indicted on May 18, 2016 on one count of possession with the intent to distribute marijuana and cocaine (Count 1); possession with the intent to distribute cocaine and cocaine base, also known as "crack" cocaine (Count 2); and unlawful use of a communications facility, in violation of 21 U.S.C. §§ 841(a)(1) and 843(d) (Count 3). The Defendant filed a motion to suppress all evidence resulting from his

---

[1] Rec. Doc. No. 39.
[2] Rec. Doc. No. 42.
[3] *See* Rec. Doc. No. 55.
[4] The factual background was derived from the Parties' briefs and testimony presented at the hearing.

1

traffic stop and arrest on April 27, 2015. The Court, relying on *Rodriguez v. United States*,[5] granted Defendant's first motion to suppress the introduction of 226 grams of marijuana and 411 grams of cocaine contained in the vehicle.[6] Defendant now moves to suppress the evidence that forms the basis of Counts 2 and 3 of the *Indictment*.

The Defendant was arrested on April 27, 2015 after police discovered narcotics subsequent to a traffic stop. While detained in the detention center for East Baton Rouge Parish, Reed made several telephone calls to his girlfriend and mother which were monitored. Information from these phone calls resulted in the discovery of additional contraband located at his girlfriend's residence and resulted in the charges reflected in Counts 2 and 3 of the *Indictment*. The Defendant contends that the contraband forming the basis of Count 2 of the indictment, as well as the unlawful use of a communications facility charge in Count 3, were derived from the continued unlawful arrest and detention of Defendant and, thus, must be excluded as "fruit of the poisonous tree." The Defendant now moves to suppress any evidence that the Government obtained as a result of the intercepted phone calls while at the detention center.

Alcohol, Tobacco, and Firearms ("ATF") Case Agent Mary Dowling ("Dowling") testified at the suppression hearing that she learned of the Defendant's arrest on April 27, 2015,[7] but she could not recall how she learned of the Defendant's arrest or how she learned of the Defendant's name.[8] Dowling contacted Baton Rouge Police Department ("BRPD") Task Force Detective Derick Moore ("Moore") around 6 or 7 pm on April 27,

---

[5] 135 S.Ct. 1609 (2015).
[6] Rec. Doc. 35.
[7] Dowling testified that she was investigating suspected drug trafficking by New Roads gangs in April, 2015. Rec. Doc. 60, p. 37, ll. 16-25.
[8] Rec. Doc. 60, p. 38, ll. 13-15, p. 39, ll. 3-5.

2015, requesting that he monitor the Defendant's calls from East Baton Rouge Parish ("EBR") detention center.[9] Moore searched the detention center phone records and discovered that the Defendant did not have a phone account at that time.[10] Moore then listened to phone calls the Defendant previously made when he was incarcerated at the EBR detention center in 2014.[11] Moore noted one phone number the Defendant called several times in 2014 and began searching the database for any subsequent calls made to the phone number.[12] Moore's research revealed that the Defendant dialed the same phone number three times on April 27, 2015, around 10 am.[13] During these phone calls, the Defendant referred to himself as "Quinn."[14] According to Moore, the Defendant referred to New Roads, Louisiana in the 2014 calls.[15]

Agents also identified a caller from the detention center as the Defendant, despite the Defendant's attempt to conceal himself by identifying himself as another inmate and using a different inmate's phone account.[16] On these calls, the Defendant gave instructions to his girlfriend to go to his house in New Roads to retrieve and remove hidden contraband. The Defendant further identified and described the contraband and specified where the hidden contraband could be found.[17] Moore forwarded summaries of the Defendant's calls from the detention center to Dowling on April 28, 2015.[18] Using this information, ATF agents traveled to New Roads[19] and met with Pointe Coupee Sherriff's

---

[9] *Id.*, p. 10, ll. 20-25, p, 11, ll. 1-9.
[10] *Id.* at p. 11, ll. 11-17.
[11] *Id.* at ll. 11-17, *See also* U.S. Exhibit 1.
[12] Rec. Doc. 60 at ll. 18-22.
[13] *Id.*
[14] *Id.*, p. 13, ll. 2-8.
[15] U.S. Exhibit 1.
[16] *Id.*, p. 42, ll. 19-25, p. 43, ll.1-6.
[17] Rec. Doc. 60, p. 42, ll. 19-25, p. 43, ll. 1-6.
[18] *Id.*, p. 41, ll. 2-7.
[19] *Id.*, p. 43, ll. 20-25.

Detective, Ferrall A. Foster ("Foster"), to execute a probable cause warrant to search the Defendant's home in New Roads.[20] Foster obtained a warrant from a Pointe Coupee district court judge to search the Defendant's home.[21]

On April 29, 2015, Pointe Coupee and ATF law enforcement officers executed the search warrant on the Defendant's home.[22] The Defendant's mother lived with the Defendant at the residence where the search warrant was executed.[23] No contraband was recovered at the residence. The search did reveal documents which verified that the Defendant lived at the residence with his mother.[24] During the search, the Defendant's mother allegedly told the officers that the Defendant's girlfriend, Becky, had come to the residence the day before and also verified that the number the Defendant dialed from the detention center was his girlfriend, Becky's, phone number.[25]

The officers then proceeded to the home of the Defendant's girlfriend in New Roads.[26] Officers obtained consent to search from the homeowner, the girlfriend's mother.[27] When searching the girlfriend's residence, officers discovered the contraband hidden in containers consistent with the descriptions and instructions that the Defendant provided to his girlfriend in the detention center calls. Quantities of cocaine, crack cocaine, and money were seized by law enforcement at the residence of Defendant's girlfriend.[28] The Defendant moves to suppress evidence of the detention center phone calls (Count 3) and the evidence seized in the consent search of the Defendant's

---

[20] *Id.*, p. 45, ll. 8-11.
[21] *Id.* at ll. 23-24.
[22] *Id.*
[23] *Id.* at p. 47, ll. 2-11.
[24] Rec. Doc. 60, p. 47, ll. 12-15.
[25] *Id.*, ll. 20-25.
[26] *Id.*, p. 48, ll. 1-3.
[27] *Id.*, p. 49, ll. 17-18, U.S. Exhibit 8, pp. 1-2.
[28] *Id.*, p. 50, ll. 10-16.

4

girlfriend's home (Count 2).

## II. LAW AND ANALYSIS

### A. Fourth Amendment Exclusionary Principle

The Supreme Court in *Herring v. U.S.* held: "The Fourth Amendment protects the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, but contains no provision expressly precluding the use of evidence obtained in violation of its commands."[29] However, Supreme Court precedents "establish an exclusionary rule that, when applicable, forbids the use of improperly obtained evidence at trial."[30] The mere occurrence of a Fourth Amendment violation, "i.e. that a search or arrest was unreasonable – does not necessarily mean that the exclusionary rule applies."[31]

In applying the exclusionary rule, the Supreme Court has "focused on the efficacy of the rule in deterring Fourth Amendment violations in the future," and the "benefits of deterrence must outweigh the costs."[32] "The principal cost of applying the rule is, of course, letting guilty and possibly dangerous defendants go free – something that offends basic concepts of the criminal justice system."[33]

---

[29] 555 U.S. 135, 140, 129 S.Ct. 695, 699, 172 L.Ed. 3d 496 (2009)(citing *Arizona v. Evans*, 514 U.S. 1, 10, 115 S.Ct. 1185, 131 L.Ed.2d 34 (1995)).
[30] *Id. a*t 700.
[31] *Id.* (citing *Illinois v. Gates*, 462 U.S. 213, 223, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983)).
[32] *Id.*
[33] *Id.* at 701 (internal citations omitted)(quoting *United States v. Leon*, 468 U.S. 897, 908, 104 S.Ct. 3405 (1984)).

### B. Motion to Suppress

Generally, "[t]he proponent of a motion to suppress has the burden of proving, by a preponderance of the evidence, that the evidence obtained was in violation of his Fourth Amendment rights.[34] Conversely, at a suppression hearing, the Government must prove, by a preponderance of the evidence, that the challenged evidence was lawfully obtained.[35]

### C. Fruit of the Poisonous Tree Doctrine

The Supreme Court in *Wong Sun v. United States*[36] recognized the exclusion of evidence obtained in violation of the Fourth Amendment, better known as fruit of the poisonous tree. "The exclusionary rule prohibits the introduction at trial of all evidence that is derivative of an illegal search, or evidence known as the fruit of the poisonous tree."[37] But, "evidence should not be excluded merely because it would not have been discovered but for a constitutional violation.[38] "Rather, the more apt question in such a case is whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint."[39]

In *U.S. v. Hernandez*, the court held that "verbal statements, in addition to physical evidence are subject to the exclusionary rule."[40] In evaluating the admissibility of a verbal

---

[34] *United States v. Kelley,* 981 F.2d 1464, 1467 (5th Cir.1993) (quoting *United States v. Smith*, 978 F.2d 171, 176 (5th Cir.1992)).
[35] *United States v. Valenzuela*, 716 F.Supp.2d 494, 500 (S.D. Tex. 2007) (citing *United States v. Matlock*, 415 U.S. 164, 178 n. 14 (1974)).
[36] 371 U.S. 471, 472, 83 S.Ct. 407, 409, 9 L.Ed.2d 441 (1963).
[37] *U.S. v. Singh*, 261 F.3d 560, 535 (5th Cir. 2001).
[38] *Wong-Sun v. United States*, 371 U.S. 471, 487-88, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).
[39] *Id.* at 488.
[40] *U.S. v. Hernandez*, 670 F.3d 616, 620 (5th Cir. 2012)(citing *Wong-Sun v. United States*, 371 U.S. 471 at 485-86, 83 S.Ct. 407).

6

statement, "the Supreme Court considers the degree of free will exercised by the defendant or a third party and balances the cost of exclusion [that] would perpetually disable a witness from testifying about the relevant and material facts against the need to deter unconstitutional conduct in the future."[41]

As outlined by the Fifth Circuit in *U.S. v. Jaquez*:

> Under the 'fruit of the poisonous tree' doctrine, all evidence derived from the exploitation of an illegal search or seizure must be suppressed, unless the Government shows that there was a break in the chain of events sufficient to refute the inference that the evidence was a product of the Fourth Amendment violation.[42]

The facts in this case require the Court to examine whether the Defendant's phone calls which led to a subsequent warrant and consent searches constitute intervening and independent events sufficient to break the chain of events which derived from the initial illegal search and seizure.

### D. Intervening Events

In *Utah v. Strieff*, the United States Supreme Court instructed that "temporal proximity between the unlawful stop and the search, favors suppressing the evidence."[43] The Court in *Strieff* noted, "our precedents have declined to find that [temporal proximity] favors attenuation unless 'substantial time' elapses between unlawful act and when the evidence is obtained."[44] Examining its prior decision in *Brown v. Illinois*, wherein "we found that the confession should be suppressed, relying on the 'less than two hours' that

---

[41] *Id.*(internal quotations omitted)(citing *Unites States v. Ceccolini*, 435 U.S. 268, 277, 98 S.Ct. 1045, 55 L.Ed.2d 268 (1976)).
[42] 421 F.3d 338, 341 (5th Cir. 2005)(quoting *United States v. Rivas*, 157 F.3d 364, 368 (5th Cir. 1998)(citing *Brown v. Illinois*, 422 U.S. 590, 602-03, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975))).
[43] 136 S.Ct. 2056, 2062, 195 L.Ed.2d 400 (2016).
[44] *Id.*

7

separated the unconstitutional arrest and the confession," the Court in *Strieff* held that several minutes passing between an illegal stop and a lawful search weighed in favor of suppressing the evidence.[45] Here, the unconstitutional search of Defendant's car occurred in the early hours of April 27, 2015, and the phone calls that form the basis of Counts 3 of the *Indictment* occurred approximately ten hours after the unlawful search. Applying the holding of the *Strieff* to the facts of the present case, the Court finds that the passage of approximately 10 hours alone is insufficient to create attenuation; however, the Court considers the passage of time as one of the factors to be considered, along with the other factors discussed below, to determine whether the evidence should be suppressed as "fruit of the poisonous tree".

"To warrant suppression ... challenged evidence must have been obtained 'by exploitation of [the alleged] illegality' rather than 'by means sufficiently distinguishable to be purged of the primary taint.' "[46] In this case, the question becomes whether the evidence derived from jail house calls made by the Defendant is exploitive of the initial illegal search and seizure or whether the nexus between Reed's original arrest, which was the product of an unlawful search and seizure, has been attenuated by independent intervening events, such that the challenged evidence cannot realistically be treated as fruits of Reed's original arrest.[47]

The Court finds that Reed's jailhouse calls are independent criminal activity, not unlike the independent criminal activity presented in *United States v. Montez-Sanchez*[48],

---

[45] *Id.* (citing 422 U.S. 590, 604, 95 S.Ct. 2254 (1975).
[46] *United States v. Ibarra–Sanchez,* 199 F.3d 753, 761 (5th Cir.1999); *U.S. v. Montez-Sanchez*, 535 Fed. Appx. 440, 442 (5th Cir.2013) (quoting *Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963));
[47] *U.S. v. Montez-Sanchez*, 535 Fed. Appx. 440, 443 (5th Cir. 2013)
[48] *Id.*

where flight from custody, combined with other illegal activities, which resulted in independent probable cause for arrest, was found to be attenuated from the challenged stop. "[W]hen [independent criminal activity] results in independent probable cause for arrest, [it] is sufficient to demonstrate attenuation."[49] The Defendant's phone calls from the detention center instructing his girlfriend to remove contraband, which was later discovered to be cocaine and crack cocaine, was an independent criminal act, not the product of exploitation of the original illegal search and seizure.

Based upon the Defendant's phone conversations with his girlfriend, law enforcement officers reasonably suspected that the Defendant was asking his girlfriend to move drugs and proceeds from drug activity.[50] Specifically, the Defendant asked his girlfriend to go to his mother's house and retrieve two yellow cans from an armoire and a purple Arizona can on a table.[51] The Defendant further instructed his girlfriend to unscrew the purple Arizona can and put up the "white stuff" until he provided further instructions.[52]

The Court finds that the nexus between the original unlawful search and the challenged evidence was attenuated by the intervening phone calls, an independent criminal act. The nexus was further attenuated by the subsequent probable cause and consent searches, neither of which have been challenged. Accordingly, the challenged evidence was derived by a "means sufficiently distinguishable to be purged of the primary taint."[53]

---

[49] 535 Fed.Appx. 440, 442 (5th Cir. 2013).
[50] Rec. Doc. 60, p. 45, ll. 8-11.
[51] U.S. Exhibit 1, p. 1.
[52] *Id.*
[53] *U.S. v. Montez-Sanchez*, 535 Fed. Appx. 440, 442 (5th Cir. 2013); citing, *United States v. Ibarra–Sanchez,* 199 F.3d 753, 761 (5th Cir.1999) (quoting *Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963));

### III. CONCLUSION

For the reasons set forth above, the Defendant's *Motion to Suppress*[54] is DENIED.

**IT IS SO ORDERED.**

Signed in Baton Rouge, Louisiana on September 12, 2017.

_____
**JUDGE SHELLY D. DICK
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA**

---

[54] Rec. Doc. No. 39.